# PORTER v. STATE.

INJUNCTION— CONTEMPT— PRACTICE— PARTIES—APPEARANCE— FINAL
ORDER—APPEAL AND ERROR—COSTS IN CONTEMPT—IMPRISONMENT
FOR NON-PAYMENT.

1. The statute making the disobedience of an injunction a con-.
   tempt is both remedial and punitive, since it not only
   authorizes the requirement of restitution to the injured
   party and further security for obedience to the injunction,
   but the imposition of a fine for the use of the county.

2. Without deciding that a proceeding against an injunction de-
   fendant as for a contempt in disobeying the injunction may
   not properly be brought and entitled on the relation of a
   party or in the name of the state, it is deemed better prac-
   tice to entitle it in the cause out of which it arises.

3. By voluntarily appearing, filing an answer, and submitting to
   a hearing without objecting to jurisdiction, upon a rule to
   show cause why he should not be punished as for contempt
   for an alleged disobedience of the injunction, an injunction
   defendant waives the irregularity, if any, in bringing and
   entitling the contempt proceeding in the name of the state
   as plaintiff.

4. After such appearance it is too late for the defendant to
   object for the first time in the appellate court on error that
   the contempt proceeding was improperly brought and. en-
   titled in the name of the state.

5. An order in a proceeding to punish an injunction defendant
   as for a contempt for an alleged disobedience of a temporary
   restraining order, which adjudges him guilty and imposes a
   penalty, is a final order in a special proceeding, and as such
   subject to review on error.

6. Plaintiff and defendant being adjoining land owners, the lat-
   ter claimed some of his premises had been included within
   the former's enclosure, in which he was sustained by a
   survey of the county surveyor made to establish the line,
   on his application, pursuant to statute. By temporary re-
   straining order the defendant was enjoined from entering
   upon plaintiff's premises described only by legal subdi-
   visions without mention of an enclosure. In a proceeding
   to punish him as for contempt for disobeying the injunction
   it was not shown that he had gone upon any of the land
   described in plaintiff's petition or restraining order, but
   merely that he had entered plaintiff's enclosure. *Held,* that
   upon the evidence the defendant was not guilty of contempt.

7. A defendant adjudged guilty of contempt for disobedience of an injunction cannot be imprisoned for non-payment of the costs of the contempt proceedings, in the absence of a statute expressly authorizing it.

8. The statute merely authorizing a commitment to custody for the non-payment of a fine imposed in a contempt proceeding for the disobedience of an injunction, there is no authority to imprison for the non-payment of the costs of such proceeding.

[Decided November 25, 1907.]          (92 Pac., 385.)

ERROR to the District court, Uinta County, HON. DAVID H. CRAIG, Judge.

Proceeding to punish as for contempt the disobedience of an injunction. The facts are stated in the opinion.

*J. H. Ryckman,* for plaintiff in error.

*B. M. Ausherman,* for defendant in error.

SCOTT, JUSTICE.

For many years prior to March 21, 1905, John W. Stoner was the owner and in possession of the southwest quarter of the northeast quarter, the south half of the northwest quarter of section three (3), and the southeast quarter of the northeast quarter of section four (4), in township 24 north, of range 119 west of the 6th principal meridian, all of said land being situate in Uinta County, Wyoming. The land adjoining and to the south was open and unoccupied government land until July 12, 1904, when Alma Porter, the plaintiff in error, made his desert land entry No. 1401 at the United States land office at Evanston, Wyoming, and which entry embraced the following described land, to-wit: the east half of the southeast quarter of section 4; the north half of the southwest quarter and the northwest quarter of the southeast quarter of section 3, all in the same township and range. Long prior and at the date of this filing Stoner had constructed and main-

tained a fence on what he claimed to be the boundary line between his land and the adjoining subdivisions south. It was claimed by Porter that the division line between his desert entry and Stoner's land was north of this fence. The dispute as to the line arose from the fact that the quarter post or corner between sections 3 and 4 had been obliterated. On October 4, 1904, Porter applied to the county surveyor of Uinta County to re-establish this corner under the provisions of Section 1188, Revised Statutes of 1899, and to survey and establish the boundary line between his desert claim and Stoner's land. Under the provisions of that section the county surveyor did in October of that year make a survey and re-establish the said quarter corner, and thereafter made an official plat thereof, which is in the record. While constructing ditches, building fences and making improvements upon the land embraced in his desert entry as surveyed by the county surveyor, and on March 21, 1905, Stoner commenced a suit to enjoin Porter from entering upon the land hereinbefore described and owned by him, and such proceedings were had therein that a temporary writ of injunction was allowed and served upon Porter for that purpose. The order, writ and petition therefor described the land by legal subdivisions. Thereafter, upon a petition supported by affidavit, Porter was cited to appear before the district court of Uinta County to show cause, if any, why he should not be punished as for contempt for an alleged disobedience of the temporary injunction. Upon the return day the plaintiff in error appeared and filed his answer, which consisted of a general denial. A hearing was had upon the issues, and upon consideration of the evidence the court found and adjudged him guilty of contempt and imposed a fine, in default of payment of which he was ordered to be confined in the county jail until the fine and costs of the proceeding were paid, or until he should be otherwise discharged by due process of law. A motion for a new trial was made, overruled, and Porter brings the case here on error.

1. The defendant in error has filed a motion to dismiss the proceedings in error upon the alleged ground that the order complained of is not subject to review in this court. It is urged that the contempt proceedings are not properly entitled and that the state is not a party thereto. In Laramie National Bank v. Steinhoff, 7 Wyo., 464, 474, this court quoted with approval from People v. Diedrich, 141 Ill., 665, where it is held that such a proceeding was properly entitled in the original case, though sometimes entitled in the name of the People ex rel., etc. In 9 Cyc., 36, it is said, "No rule as to the proper entitlement of the proceeding is deducible from the authorities. The practice in some jurisdictions is to prosecute a matter of contempt in the cause or proceeding out of which it arose and not as a separate proceeding with a title of its own. The practice in other jurisdictions is to entitle the proceeding in the name of the State or People, or in the name of the State or People at the relation of a party. The logical practice would seem to be to give the proceeding the title of the case out of which the alleged contempt arose, if the object is to compel performance of an act as a remedy for a party; but if the object is punishment alone the proceeding should be in the name of the State." Many cases are cited in the foot notes in support of the text. Our statute authorizes the imposition of a fine, no part of which goes to the party complaining, and the proceeding may, as it did in this case, result in a fine only of the contemnor. While the statute is remedial, it is also punitive, but we are not prepared to say that it may not, in the absence of any statute as to how such a proceeding should be entitled, be brought on the relation of a party or in the name of the State; but preferably we think it should be entitled in the cause or proceeding out of which it arose. The record shows that the order or judgment appealed from is the one rendered in the case of The State of Wyoming, Plaintiff, v. Alma Porter, Defendant. The question sought to be raised here is not by way of review, for the record fails to show that that

question was presented to the court below, and it is, there-
fore, presented here for the first time. This in our judg-
ment is too late, for the contemnor voluntarily appeared
in person and by attorney in that court, and without ob-
jection to the jurisdiction of the court filed his answer to
the rule to show cause. He thereby admitted himself to
be regularly in court, and all questions of irregularity in
process or method of obtaining jurisdiction became im-
material. It was so held by this court in *Ex parte* Berg-
man, 3 Wyo., 393.

The proceedings in the lower court were under the
provisions of Section 4048, Revised Statutes of 1899. That
section is as follows: "An injunction or restraining order
granted by a judge may be enforced as the act of the
court, and disobedience thereof may be punished by the
court, or any judge who might have granted it in vacation,
as a contempt; an attachment may be issued by the court
or judge upon being satisfied by affidavit of the breach of
the injunction or restraining order, against the party guilty
of the same; and such party may be required by the court
or judge to pay a fine not exceeding two hundred dollars,
for the use of the county, to make immediate restitution to
the party injured, and to give further security to obey the
injunction or restraining order, and in default thereof, he
may be committed to close custody until he complies with
such requirement, or is otherwise legally discharged." An
order or judgment of conviction under this section may
have a double aspect. First, it may be in the nature of a
remedy to the party injured by way of compelling restitu-
tion and security against a continuance or recurrence of the
act complained of; second, it may be punitive or a pun-
ishment of the offense of contempt. The statute provides for
both, and the form of the judgment would depend upon the
circumstances of the case. In the first aspect it is only for
the private benefit of the party injured, and in the second
the imposing of the fine not only vindicates and asserts the
authority of the court, but in addition serves to deter the

defendant from continued or further disobedience of the court's order and, therefore, is an aid to the remedy sought by the plaintiff in the main suit. The section was held to by remedial in Laramie National Bank v. Steinhoff, *supra,* where this court said: "The statute is clearly remedial in character, and the order made in a contempt proceeding authorized by its provisions is one which affects a substantial right * * *." It was there further held that when such order was made after judgment or decree and in aid thereof upon a summary application it was made in a special proceeding within the provisions of Section 4247, Revised Statutes of 1899, and subject to be reversed, vacated or modified by this court (Sec. 4249, R. S. 1899) for errors appearing upon the record. We think that when an order is so made before final judgment in aid of and to compel obedience to the temporary writ of injunction that it was equally final and also made in a special proceeding. Section 4247 is as follows: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter." Section 4249 is as follows: "A judgment rendered or final order made by the district court may be reversed, vacated or modified by the supreme court, for errors appearing on the record." Our statute thus recognizes though it nowhere defines what constitutes a special proceeding. The supreme court of Wisconsin said in Ernst v. The Steamer Brooklyn, 24 Wis., 616, that "It may not be easy in all cases to determine what is a special proceeding. But many proceedings will be recognized as such; as proceedings for contempt, to obtain discovery of books, etc.; proceedings supplementary to execution and many others." This statement is quoted with approval in a later opinion of that court. (Witter v. Lyon et al., 34 Wis., 564.) The order here

complained of affected a substantial right and was a final determination of the contempt proceedings. (Laramie Nat. Bank v. Steinhoff, *supra.*) Such order could have no effect or bearing upon the final judgment or decree. It in no manner affected or involved the merits, nor did it determine any question for or against either party to the injunction suit. It was not, therefore, a final order affecting a substantial right made in the action. The statute recognizes such an order when made in the action or in a special proceeding and no other. We are of the opinion that the order complained of was final, affected a substantial right, and that it was made in a special proceeding. It may, therefore, be revived by this court on error.

2. The plaintiff in error assigns as error the overruling of his motion for a new trial. One of the grounds of the motion is that the decision is not sustained by sufficient evidence. We are of the opinion that this contention is correct. The question at issue turned upon the location of the line between the lands of the parties and was as to whether the plaintiff in error had gone upon the land of Stoner, nothing being said in the order as to Stoner's enclosure, and the land described being referred to by legal subdivisions only. The plaintiff in error long prior to the issuance and service of the writ of injunction availed himself of the provisions of Section 1188, Revised Statutes of 1899. That section is as follows: "Whenever the proper location of any monument which marks the corner of any tract or tracts of land shall be in dispute between the owners of the lands of which it is the common monument or boundary, the said monument shall be established in the following manner: The county surveyor of the county in which said corner is located, upon the application of any of the parties in interest, shall immediately give notice in writing to all parties interested in the establishment of said corner, naming a day when he will be upon the ground and make the necessary surveys to establish the said corner, and if such service of written notice cannot

be made upon the owners or agents by reason of non-residence, then in that case such notice shall be published for four consecutive weeks in some newspaper published in the county, or if there be no newspaper published therein, then in some newspaper of general circulation published nearest such county. The proper notice being given as above set forth, the county surveyor shall, upon the day named in said notice, proceed to establish such monument in accordance with the instructions issued by the general land office of the United States government. He shall firmly plant a suitable monument at the point by him so found. Shall accurately take and note courses and distances from said point to one or more prominent objects of a permanent nature, if such there be in the vicinity; shall make a map or plat of the survey so by him made and shall record the same together with a statement of the whole proceedings, including the application, notice and names of the parties in interest in the records of his office. Such monuments established as provided in this section shall be held to be the true and legal monument defining the boundary corners as stated in the record of said survey." The plaintiff in error was entitled to the exercise of this statutory right, and having done so in good faith for the purpose of ascertaining the boundary of his land and such boundary having been so established he had a right, in the absence of any injunction restraining him from so doing, to enter and make such improvements thereon within the boundaries so fixed as he deemed advisable. It will be observed that the plaintiff in error was not restrained from entering Stoner's enclosure, but from entering upon certain legal subdivisions as fixed and designated by the government survey. The testimony on behalf of Stoner, the complainant, went only to show that the plaintiff in error had entered upon some of the land enclosed by Stoner's fence, assuming apparently that the right to go inside the enclosure was in issue and that the right of Stoner to the exclusive possession of the land in the enclosure was pro-

tected by the injunction. But the writ only ordered the defendant, his servants, etc., "to absolutely desist and refrain from entering upon the land and premises or any part thereof described in said petition, said land being described as follows, to-wit: The southwest quarter of the northeast quarter, and the south half of the northwest quarter of section three; and the southeast quarter of the northeast quarter of section four, township 24 north, range 119 west of the 6th principal meridian, and from digging post holes thereon and from committing any of the acts complained of in plaintiff's petition." Not only is the evidence insufficient to sustain the decision, but there is an affirmative showing that the defendant was not guilty of disobedience of the order of injunction.

3. Plaintiff in error urges that the judgment is contrary to law. It will be observed from the language of Section 4048, Revised Statutes, *supra,* that the jurisdiction of the court to order that the contemnor be confined in the county jail in such cases for non-payment of fine does not authorize the court to so order for non-payment of costs. Such statutes are strictly construed, and while the costs may be taxed against the defendant, yet in the absence of statute expressly authorizing the court to do so the right to imprison for a failure or neglect to pay such costs does not exist. It was so held in Miller et al. v. The Toledo Grain & Milling Co., 21 O. C. C., 332, where a statute identical in terms was construed. We are of the opinion that if upon other grounds the order could be sustained, then it would be the duty of this court to modify it in that respect.

There is no evidence to support the judgment or order, and for that reason the order should be, and it is hereby, reversed, and the proceeding is remanded with directions to the district court of Uinta County to discharge the defendant.

POTTER, C. J., and BEARD, J., concur.